IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT L. MALONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-cv-554-GMB |
| | ) | [WO] |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

On August 17, 2015, Plaintiff Robert L. Malone applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of January 29, 2015. Plaintiff's application for benefits was denied at the initial administrative level on October 19, 2015. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on January 27, 2017. She denied Plaintiff's claim on June 27, 2017. Plaintiff requested a review of the ALJ's decision by the Appeals Council, which declined review on April 7, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of April 7, 2018.

Plaintiff's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Based on a careful review of the parties' submissions, the relevant law, and the

record as a whole, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder." *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). The requisite showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing

the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id*. (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff bears the burden of proving that he is disabled, and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

    (1) Is the claimant presently unable to engage in substantial gainful activity?
    (2) Are the claimant's impairments severe?

3

> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his former occupation?
> (5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015); 20 C.F.R. § 404.1520(a)(4)(i–v). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Robert Malone was 46 years old at the time he filed his disability application and 48 years old at the time of the ALJ's decision. R. 31. He lives in a house with his girlfriend and their seven-year-old child in Alexander City, Alabama. R. 68. Plaintiff has a twelfth-grade education in addition to one year of college coursework. R. 69. He served one year in the United States Navy before being injured when "cargo fell on" him while onboard a Navy ship. R. 1200. Plaintiff was honorably discharged at the rank of E-3. R. 1200. He has a 90% Veterans Administration ("VA") disability rating. R. 24 & 1291.

Plaintiff's primary complaints are back injury, depression, and shoulder injury.

R. 205. He has a documented medical history dating back to 1987.[1] In the past, he has worked as a forklift operator, molding machine tender, bulldozer operator, wire harness assembler, lab tester, production assembler, and tractor trailer operator. R. 30 & 221–22. He has not engaged in substantial gainful activity since January 29, 2015. R. 18. On the alleged disability date, Plaintiff was involved in an accident while driving a tractor trailer. R. 20.

Following an administrative hearing, the ALJ found that Plaintiff suffers from the following severe impairments under 20 C.F.R. § 404.1520(c): cervical degenerative disc disease, lumbar radiculopathy, carpal tunnel syndrome, tendinitis, arthritis, left shoulder bursitis, gout, mild traumatic brain injury, somatic symptom disorder, and adjustment disorder with mixed mood. R. 15. But the ALJ found at step three of the analysis that none of Plaintiff's impairments, nor a combination of his impairments, met or medically equaled the severity of one of those listed in the applicable regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. R. 30. Nevertheless, she found that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of sedentary work[2] as follows:

> [Plaintiff] can occasionally push/pull foot controls, bilaterally. He can occasionally reach overhead with the left upper extremity. He can frequently handle and feel, bilaterally. He can occasionally climb ramps and stairs, and never climb ladders and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He can never work in environments of unprotected heights, and moving, hazardous mechanical parts. He can never operate a motor vehicle for commercial purposes. He is limited to performing simple

---

[1] Exhibit 19F contains a 1987 document from the Tuskegee VA relating to lower back pain. R. 1302. The rest of the medical records on file begin around 2013.

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

> tasks. He can tolerate occasional interaction with supervisors, coworkers and the public. He can tolerate occasional changes in a routine work setting. He would need the use of a cane for walking only.

R. 18. The RFC "is the most [a claimant] can still do ['in a work setting'] despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that Plaintiff can perform that exist in significant numbers in the national economy. R. 31. Specifically, based on the testimony of a vocational expert, the ALJ found that Plaintiff could be a stringing machine tender; label pinker; and a bonder, semi-conductor. R. 32. Therefore, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. R. 32. Based on these findings, the ALJ denied Plaintiff's claims. R. 10.

## IV. DISCUSSION

Plaintiff presents three issues on appeal: (1) whether the ALJ erred by improperly acting as both Judge and medical doctor; (2) whether the ALJ erred by failing to reject Plaintiff's subjective pain testimony prior to issuing her unfavorable decision; and (3) whether the ALJ erred by failing to provide adequate rationale addressing the medical opinions of record expressed by Elizabeth Knight, M.D. and Nurse Practitioner Lakeisha King, DNP. Doc. 10 at 2–3.

**A.     Whether the ALJ acted as Both Judge and Medical Doctor**

Plaintiff argues that the ALJ erred when she "act[ed] as both Judge and medical doctor" in determining the severity of Plaintiff's carpal tunnel syndrome ("CTS") and its effect on his RFC and limitations. Doc. 10 at 2–8. Specifically, he alleges that the ALJ provided no evidentiary basis to support her decision that Plaintiff is capable of "frequent

bilateral handling and fingering" and that the ALJ inserted her "own medical evaluation of the objective findings evidencing moderate to severe [CTS]." Doc. 10 at 8 & R. 26.

The ALJ has a duty to assess the claimant's RFC. *See Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); 20 C.F.R. § 404.1546(c). She must consider all available medical evidence as well as all limitations associated with any impairments. 20 C.F.R. § 404.1545(a)(3). The ALJ may not, however, decide the RFC based solely on her own opinion. *See Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1219–20 (N.D. Ala. 2004) ("An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement."). And the ALJ cannot "substitute his [or her] own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir. 1992). However, the ALJ's RFC assessment need not "be supported by the assessment of an examining or treating physician." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055–56 (S.D. Ala. 2016).

The ALJ ruled that Plaintiff's limitations were not severe enough to prevent him from "perform[ing] fine and gross movements effectively." R. 26. As for CTS, the ALJ ruled that Plaintiff's RFC limits him "to the lifting and carrying demands of sedentary work, and frequently bilateral handling and fingering." R. 26. The ALJ in this case used acceptable sources to determine that Plaintiff could frequently handle and finger bilaterally. *See* 20 C.F.R. §§ 404.1502(a) & 404.1529(a)(3).[3] These included Plaintiff's mental and

---

[3] Acceptable medical sources at the time of Plaintiff's application include: "(1) Licensed physician (medical or osteopathic doctor); [and] (2) Licensed psychologist, which includes: (i) A licensed or certified psychologist at the independent practice level . . . ." 20 C.F.R. § 404.1502(a).

physical treatment records from the Tuskegee VA Medical Clinic dating back to 1987 and records pertaining to Plaintiff's post-accident medical care and physical therapy.

Plaintiff testified that he underwent carpal tunnel surgery on his right wrist prior to his January 2015 accident. R. 76. In March 2015, he had "(1) left shoulder arthroscopy, rotator cuff repair, and (2) arthroscopic debridement and decompression" following his January motor vehicle accident. R. 19, 20, 75, 76, 1033 & 1065. Post-operation evaluations showed "full range of motion of the elbow, wrist, fingers and hand." R. 20 & 1039. Plaintiff reported that he had little pain and that "things are getting better." R. 20 & 1048. Robert McAlindon, M.D., cleared Plaintiff to return to work "at full duty on July 20, 2015 with no restrictions." R. 20 & 1048. The ALJ did acknowledge that Plaintiff fell on his left shoulder shortly after surgery. R. 19. She also referred to Plaintiff's October 2015 consultative examination with Ammar Aldaher, M.D.[4] Although Plaintiff's chief complaint was back pain, Dr. Aldaher's examination "revealed that [Plaintiff] had normal grip strength." R. 21, 26 & 1058. Further, the examination revealed that Plaintiff's reflexes and grip were normal as was his gait. R. 21 & 1058. Plaintiff did not use an assistive device. R. 21 & 1058. A neurological examination revealed no muscle weakness. R. 21 & 1058. Finally, Dr. Aldaher concluded that Plaintiff "was able to do work related activities such as sitting, standing, walking, lifting, carrying, and holding objects." R. 21 & 1058.

The ALJ also considered Plaintiff's January 2016 evaluation with Wael Hamo, M.D., where "an electromyogram and nerve conduction study revealed: (1) moderate to right severe right carpal tunnel syndrome, [and] (2) moderate left carpal tunnel syndrome."

---

[4] The ALJ gave partial weight to Dr. Aldaher's opinion. R. 28.

R. 22 & 1066. Dr. Hamo suggested that Plaintiff use wrist splints on his follow-up appointment later that month despite reporting a neurological examination that "revealed [Plaintiff had a] right hand grip strength of 80–90/100 and left hand grip strength 90/100." R. 26 & 1065–66.

That ALJ also relied on Plaintiff's own testimony in her decision. He testified that he could "lift a gallon of milk with his left arm." R. 19 & 76. He reported that he does not "have problems lifting overhead with his right arm." R. 19. He drives two to three times per week. R. 18 & 69. Although he has some difficulty changing his clothes, he is still able to perform basic hygiene and self-care. R. 17.

The ALJ relied on each of these sources of evidence in the determining Plaintiff's RFC and limitations and in concluding that he could perform work tasks that included frequent bilateral handling and fingering. The court concludes that substantial evidence supported her decision.

**B.     Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ did not consider Plaintiff's pain testimony prior to issuing the unfavorable decision. Doc. 10 at 11. Specifically, Plaintiff points to his "objectively determined neck impairment" and the "moderate spinal stenosis and severe eccentric bony foraminal stenoses of [his] cervical spine" as factors that could "give rise to his alleged pain." Doc. 10 at 11. Additionally, he argues that the ALJ's statement that Plaintiff's testimony is "not consistent with the medical evidence" is "conclusory and does not provide substantial evidence in support of her decision." Doc. 10 at 11.

The Eleventh Circuit has developed a three-part "pain standard" that applies when a claimant attempts to establish disability through his own testimony of pain or other

9

subjective symptoms. *See Holt v. Sullivan*, 931 F.2d 1221, 1223 (11th Cir. 1991). That standard requires a claimant to show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*See id*. (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). At step one, the ALJ held that Plaintiff does have "an underlying medically determinable impairment that could reasonably cause pain." R. 26. Yet she held that Plaintiff's testimony concerning his pain is "not supported by substantial objective medical evidence, including medical signs and laboratory findings." She also found that "the objectively determined medical condition is [not] of such severity that it can reasonably be expected to give rise to the alleged pain, and that the claimant's testimony is an exaggeration not consistent with the medical evidence of record." R. 26. Lastly, she determined that "the intensity, persistence, and functionally limiting effects of the claimant's pain do not preclude the performance of work activity." R. 26.

It is at the third stage where Plaintiff argues that the ALJ erred. At step three, the ALJ "must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work." *Spivey v. Berryhill*, 2017 WL 4227936, at *3 (M.D. Ala. Sept. 21, 2017) (citations omitted). In addition to objective medical evidence, a claimant may provide additional information, including "what may precipitate or aggravate [the] symptoms, what medications, treatments . . . and how the symptoms may affect [claimant's] daily pattern of living." 20 C.F.R. § 1512(c)(3). Claimant's statements concerning pain "will not alone establish . . . disab[ility]." 20 C.F.R. § 404.1529(a). Such

10

statements must be backed by objective medical evidence. 20 C.F.R. § 404.1529(a). Accordingly, the ALJ is free to reject a claimant's subjective testimony, *Moore v. Barnhart*, 406 F.3d 1208, 1212 (11th Cir. 2005), but "must articulate explicit and adequate reasons for doing so." *Jacques v. Colvin*, 2016 WL 5340523, at *5 (M.D. Ala. Sept. 23, 2016) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).

Plaintiff's primary complaints are neck and lower back pain. However, the ALJ found that Plaintiff's complaints did not match the objective medical evidence. For instance, the ALJ noted that the Plaintiff "underwent surgery for a torn rotator cuff and was returned to work at full duty." R. 25. Also, an evaluation following Plaintiff's motor vehicle accident revealed no severe injuries to his lower back or left shoulder. R. 20 & 285. The ALJ noted Dr. Aldaher's October 2015 examination in which Dr. Aldaher concluded that Plaintiff's range of motion in his neck "revealed no abnormality in the cervical area" (R. 21 & 1058), and that Plaintiff's back had "no spasm" or "abnormality of range of motion in the lumbosacral area." R. 25 & 1058–59. In addition, an imaging of Plaintiff's left shoulder and spine were "fairly benign" during a consultation with the Tuskegee VA on December 14, 2015. R. 22 & 1097–98.

The ALJ also relied on medical evidence that showed no signs of prolonged pain. Plaintiff, the ALJ noted, "has no neurological deficits, muscle atrophy, nor significant weight loss, generally associated with protracted prolonged pain, at a severe level." R. 25. Plaintiff argues that Dr. Eckardt's notes support his pain testimony, but these notes merely repeat Plaintiff's subjective statements and do not pertain to Dr. Eckardt's assessment. Doc. 10 at 9 & R. 1200. The ALJ also noted Dr. Hamo's January 28, 2016 examination revealing, in the ALJ's characterization, "tenderness of the cervical and lumbar spine and

11

that claimant had a normal gait." R. 29 & 1061. Finally, the ALJ noted the VA's November 28, 2016 assessment of Plaintiff's lumbar spine that "revealed right paraspinous tenderness," "normal" motor and sensory abilities, and that his "most recent imaging did not correlate with low back nerve impingement." R. 29 & 1266. On this record, there is no basis for concluding that substantial evidence did not support the ALJ's findings.

Plaintiff also argues that the ALJ did not evaluate the intensity and persistence of his spinal stenosis and eccentric bony stenosis symptoms. But the ALJ did consider these symptoms. For example, the ALJ noted that at a follow-up visit Plaintiff preferred to delay injections in his cervical and lumbosacral spine. R. 22 & 1061–62. Plaintiff also refused a non-narcotic pain medication after his request for a narcotic-strength refill was denied because he tested positive for marijuana, and at the same appointment he refused a physical therapy consultation. R. 21 & 1121. In August 2015, Plaintiff left before completing the recommended physical therapy following his left shoulder surgery, stating that he could not bear the pain. As he was leaving, however, Plaintiff remarked that "he had settled his worker's compensation claim and that he was leaving." R. 20 & 586. There is no basis for concluding that ALJ erred in her consideration of this evidence.

For all of these reasons, the ALJ properly considered Plaintiff's subjective testimony concerning his pain.

**C.    Medical Opinions**

Plaintiff argues that the ALJ erred by failing to provide adequate rationale for assigning partial weight to the medical opinions of Dr. Knight and nurse practitioner King. Doc. 10 at 3. Indeed, it is reversible error for an ALJ to fail to articulate the weight given to a non-treating physician opinion or the grounds for discounting that opinion. *McClurkin*

*v. Soc. Sec. Admin.*, 625 F. App'x 960 (11th Cir. 2015). After reviewing the ALJ's report and the record as a whole, however, this court finds that the ALJ provided ample evidence and rationale for assigning partial weight to the medical opinions of Knight and King.

"In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)). More weight is given to specialists than generalists. 20 C.F.R. § 416.927(c)(5). In any event, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). A "treating source" must have an "ongoing treatment relationship," meaning that Plaintiff must "see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [Plaintiff's] medical condition(s)." 20 C.F.R. § 404.1527(a)(2). However, a medical source that has evaluated a patient "only a few times or only after long intervals (e.g., twice a year)" can be considered a treating source "if the nature and frequency of the treatment or evaluation is typical for [Plaintiff's] condition(s)." 20 C.F.R. § 404.1527(a)(2). On the other hand, the ALJ is not obligated to give any particular deference to medical opinions based on a one-time evaluation. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion."); *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055–56 (S.D. Ala. 2016)

(holding that the ALJ's RFC assessment is not required to "be supported by the assessment of an examining or treating physician").

### 1. *King's Opinion*

Plaintiff argues that the ALJ failed to provide an adequate justification for assigning partial weight to nurse practitioner King's opinion that Plaintiff had an abnormal gait. Doc. 10 at 11–15. King conducted a Compensation & Evaluation examination on Plaintiff's thoracolumbar spine on February 10, 2016. This examination was the only time King assessed Plaintiff, and therefore the ALJ correctly did not consider King to be a treating physician. *See McSwain*, 814 F.2d at 619. She concluded that Plaintiff, who was having a flare up at the time of the examination, had an abnormal gait and decreased sensation. R. 23, 25, 28 & 1152. Though the ALJ acknowledged that the medical evidence indicates that Plaintiff was diagnosed with degenerative disc disease of the cervical spine and lumbar radiculopathy (R. 25), she assigned partial weight to King's opinion because the assessment was only "partially consistent" with the record as a whole. R. 28. The court finds that the ALJ provided adequate reasoning to support her decision to assign King's opinion only partial weight.

The ALJ pointed to medical opinions by other doctors who examined Plaintiff before and after King. For instance, on October 15, 2015 Dr. Aldaher concluded that Plaintiff had a normal gait, grip, and range of motion in the lumbar spine. R. 25 & 1058. On January 28, 2016, Plaintiff was evaluated at the Hamo Neurological Clinic where, the ALJ noted, he had a normal gait along with tenderness of the cervical and lumbar spine. R. 25 & 1060–62. And on February 12, 2016, two days after King's evaluation, Jacqueline Ross, LPN, noted that Plaintiff "ambulated with a steady gait." R. 25, 29 & 1222.

This objective medical evidence supports the ALJ's assignment of partial weight to King's opinion because the evidence as a whole contradicted the conclusion that Plaintiff had an abnormal gait, and the ALJ provided sufficient rationale to justify her decision concerning the weight she gave to King's evaluation.

### 2. *Knight's Opinion*

Plaintiff asserts that the ALJ erred by providing insufficient reasoning for assigning Dr. Knight's opinion only partial weight. Plaintiff underwent a psychological evaluation with Dr. Knight on February 1, 2016. R. 22, 1091–95 & 1156–60. Dr. Knight, who evaluated Plaintiff on only a single occasion, determined that his mental state had "worsened" over the past four years. R. 23 & 1094; *see McSwain*, 814 F.2d at 619 (noting that the ALJ is not obligated to accept medical opinions based on a one-time evaluation).

In concluding that Dr. Knight's assessment was "partially consistent with the record as a whole," the ALJ noted several other physicians and psychologists whose opinions differed from Dr. Knight's psychological examination. Baowu Wang, M.D. evaluated Plaintiff on June 1, 2015, finding that he was "alert and oriented . . . his recent and remote memory [and concentration] were intact . . . and [h]is mood was mildly sad and his affect was constricted." R. 21 & 325–26. Dr. Wang's assessment included, among other things, that Plaintiff suffered from "Major Depressive Disorder, mild." R. 21 & 325–26. Juan Carmona, M.D., saw the Plaintiff on two separate occasions, October 2, 2015 and April 11, 2016. He opined that "Plaintiff was fully oriented. His mood and affect were normal. His cognitive functions, memory, and concentration are good. His insight and judgment were good." His assessment was "mild traumatic brain injury and depression." R. 21, 24, 29 & 1202–06. Robert Estock, M.D., a psychological consultant, saw Plaintiff on October 19,

2015 and found that he did not have a severe mental impairment and that he was "not disabled." R. 21, 98–99 & 104. Dr. Estock assessed that Plaintiff had "mild restrictions of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation, of extended duration." R. 21 & 99. Dr. Pamela Griffiths evaluated Plaintiff's mental state on November 30, 2015. Dr. Griffiths determined that Plaintiff was "mildly dysthymic," but noted that he was not in compliance with his medication regimen. R. 22 & 1105. Dr. Griffiths assessment of Plaintiff was: "(1) depression disorder, not elsewhere classified, (2) rule out secondary gain, and (3) compliance issues." R. 22 & 1108. In June 2016, Dr. Eckardt, a licensed psychologist, diagnosed Plaintiff with "somatic symptom disorder, with predominant pain." R. 24 & 1200–01. The ALJ also noted the January 24, 2017 mental status evaluation conducted by the Tuskegee VA Medical Clinic, which revealed that

> the claimant was fully oriented. His mood and affect were normal. He denied suicidal ideations . . . [h]is cognitive functions, memory and concentration were good. His insight and judgment were good. The assessment was mild traumatic brain injury and depression, responding fair to current medication and in need of medication adjustment and refills.

R. 24, 29 & 1296. The court finds that the ALJ provided adequate rationale to support her decision to assign the medical opinions only partial weight.

## V. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be issued separately.

DONE this 14th day of June, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE