IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ROBERT L. MALONE,                    )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )     CIVIL ACT. NO. 3:18-cv-554-ECM
                                     )              (WO)
ANDREW SAUL,[1]                      )
Commissioner of Social Security,     )
                                     )
        Defendants.                  )

## MEMORANDUM OPINION

## I.  INTRODUCTION

Plaintiff Robert L. Malone ("Malone") filed for disability insurance benefits under

Title II of the Social Security Act, alleging a disability onset date of January 29, 2015.  (R.

94).[2]  His application for benefits was denied at the initial administrative level on October

19, 2015.  (R. 105).  He then requested a hearing before an Administrative Law Judge

("ALJ"). Following a hearing on January 27, 2017, the ALJ issued a decision denying the

Plaintiff's claim for benefits on June 27, 2017.  (R. 33).  The Appeals Council denied

Malone's subsequent request for review. (R. 1).  Thus, the ALJ's decision became the final

---

[1] On June 17, 2019, Andrew Saul became the current Commissioner of Social Security, and thus, is automatically substituted as a party pursuant to FED.R.CIV.P. 25(d).  *See also*, section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of the Commissioner of Social Security.)

[2] The citations are to the Social Security administrative record (doc. 12) filed on November 13, 2018.

decision of the Commissioner of the Social Security Administration ("Commissioner").[3] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review pursuant to 42 U.S.C. § 405(g). Based on the Court's review of the record in this case, and the briefs of the parties, the Court concludes that the decision of the Commissioner should be affirmed.

## II. STANDARD OF REVIEW

To qualify for disability benefits, a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Plaintiff bears the burden of proving that he is disabled, and "is responsible for producing evidence sufficient to support his claim." *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4] *See also, Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015); 20 C.F.R. § 404.1520(a)(4)(i–v). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

The standard of review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

(11th Cir. 1997); *see also,* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted "even if this court . . . would have reached a contrary result." *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ." *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings. No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (internal citations and quotation marks omitted).

4

# III. THE ISSUES

**A. Introduction.**   Robert Malone was 48 years old at the time of the hearing before the ALJ, and he has a high school education.  (R. 68-69).  He served one year in the United States Navy before being injured when "cargo fell on" him while onboard a Navy ship. (R. 1200).  Malone has a 90% Veterans Administration ("VA") disability rating. (R. 24 & 1291). Following the administrative hearing, the ALJ concluded that the Plaintiff has severe impairments of

> cervical degenerative disc disease, lumbar radiculopathy, carpal tunnel syndrome, tendinitis, arthritis, left shoulder bursitis, gout, mild traumatic brain injury, somatic symptom disorder, and adjustment disorder with mixed mood.

(R. 15).

His past relevant work experience includes work as a "Forklift Operator, Molding Machine Tender, Bulldozer Operator, Wire Harness Assembler, Lab Tester, Production Assembler and Tractor Trailer Operator."  (R. 30).  Malone has not engaged in substantial gainful activity since January 29, 2015, when he was involved in a rollover motor vehicle accident while driving a tractor trailer.  (R. 20).  The ALJ concluded, at step four of the analysis, that Malone was unable to perform any past relevant work.  (R. 30).  Nevertheless, she found that Plaintiff has the residual functional capacity[5] ("RFC") to perform a limited range of sedentary work as follows:

> [Plaintiff] can occasionally push/pull foot controls, bilaterally. He can occasionally reach overhead with the left upper

---

[5] The RFC "is the most [a claimant] can still do ['in a work setting'] despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

extremity. He can frequently handle and feel, bilaterally. He can occasionally climb ramps and stairs, and never climb ladders and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He can never work in environments of unprotected heights, and moving, hazardous mechanical parts. He can never operate a motor vehicle for commercial purposes. He is limited to performing simple tasks. He can tolerate occasional interaction with supervisors, coworkers and the public. He can tolerate occasional changes in a routine work setting. He would need the use of a cane for walking only.

(R. 18).

Considering Malone's age, education, work experience, RFC, and relying on the testimony of a vocational expert, the ALJ concluded that there were jobs existing in significant numbers in the national economy that he could perform, and thus, concluded that Malone was not disabled. (R. 25-26).

**B. Plaintiff's Claims.** Malone presents three issues for the Court's review. As stated by the Plaintiff, the issues are as follows:

1. The Commissioner's decision should be reversed because the ALJ erred by acting as both Judge and medical doctor.

2. The Commissioner's decision should be reversed because the ALJ erred by failing to properly reject Mr. Malone's pain testimony prior to issuing her unfavorable decision.

3. The Commissioner's decision should be reversed because the ALJ erred by failing to provide adequate rationale addressing the medical opinions of record expressed by Dr. Knight and Ms. King.

(Doc. 10 at 2-3).

## IV. DISCUSSION

A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). The Court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within these parameters, the Court now addresses the Plaintiff's claims.

**A.     Whether the ALJ acted as both Judge and Medical Doctor.** Malone first argues that the ALJ erred when she "act[ed] as both Judge and medical doctor" in determining the severity of his carpal tunnel syndrome ("CTS") and its effect on his RFC

and limitations. (Doc. 10 at 2-8). Specifically, Malone alleges that the ALJ provided no evidentiary basis to support her decision that he is capable of "frequent bilateral handling and fingering" and that the ALJ inserted her "own medical evaluation of the objective findings evidencing moderate to severe [CTS]." (Doc. 10 at 8; R. 26). The Court disagrees.

The ALJ has a duty to assess the claimant's RFC. *See Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); 20 C.F.R. § 404.1546(c). She must consider all available medical evidence as well as all limitations associated with any impairments. 20 C.F.R. § 404.1545(a)(3). The ALJ may not, however, decide the RFC based solely on her own opinion. *See Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1220 (N.D. Ala. 2004) ("An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement."). And the ALJ cannot "arbitrarily substitute his [or her] own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). However, the ALJ's RFC assessment need not "be supported by the assessment of an examining or treating physician." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055-56 (S.D. Ala. 2016).

The ALJ considered Malone's carpal tunnel syndrome, and included limitations from that impairment in her RFC, specifically that Malone "can frequently handle and feel, bilaterally." (R. 18). The ALJ elaborated on Malone's carpal tunnel syndrome in her determination.

> Furthermore, the record documents that the claimant has been diagnosed with carpal tunnel syndrome. The consultative

examination in October 2015 revealed that the claimant had normal grip strength. (Exhibit 11F) The neurological examination performed in January 2016, reveled (sic) right hand grip strength 80-90/100 and left hand grip strength 90/100. (Exhibit 12F) Overall, the evidence of record supports a finding that the claimant has the ability to perform fine and gross movements effectively. Because of carpal tunnel syndrome, the residual functional capacity limits the claimant to the lifting and carrying demands of sedentary work, and frequently bilateral handling and fingering.

(R. 26).

Substantial evidence supports the ALJ's determination regarding Malone's carpal tunnel syndrome and its limitations. The ALJ used acceptable sources to determine that Malone could frequently handle and finger bilaterally. *See* 20 C.F.R. §§ 404.1502(a) & 404.1529(a)(3).[6] These sources included Malone's treatment records from the Tuskegee VA Medical Clinic dating back to 1987 as well as medical records pertaining to his post-accident medical care and physical therapy.

In addition, Malone testified that he underwent carpal tunnel surgery on his right wrist prior to his January 2015 accident. (R. 76). After his motor vehicle accident, Malone was taken to Grady Hospital in Atlanta, Georgia for treatment. Medical records from his treatment at Grady Hospital in Atlanta, Georgia, do not reveal any complaint by Malone of pain in his wrists. (R. 276-81). In March 2015, Malone had "(1) left shoulder arthroscopy, rotator cuff repair, and (2) arthroscopic debridement and decompression" to repair a rotator

---

[6] Acceptable medical sources at the time of Plaintiff's application include: "(1) Licensed physician (medical or osteopathic doctor); [and] (2) Licensed psychologist, which includes: (i) A licensed or certified psychologist at the independent practice level . . . ." 20 C.F.R. § 404.1502(a).

cuff tear that occurred as a result of the January motor vehicle accident. (R. 19, 20, 75, 76, 1033 & 1065). Post-operation evaluations showed "full range of motion of the elbow, wrist, fingers and hand." (R. 20 & 1039). Malone reported that he had little pain and that "things are getting better." (R. 20 & 1048). Robert McAlindon, M.D., cleared Malone to return to work "at full duty on July 20, 2015 with no restrictions." (R. 20 & 1048).

The ALJ also referred to Malone's October 2015 consultative examination with Ammar Aldaher, M.D.[7] Although Malone's chief complaint was back pain, Dr. Aldaher's examination "revealed that [Plaintiff] had normal grip strength." (R. 21, 26 & 1058). Further, the examination revealed that Malone's reflexes and grip were normal as was his gait. (R. 21 & 1058). At that time, Malone did not use an assistive device. (*Id.*). A neurological examination revealed no muscle weakness. (*Id.*). Finally, Dr. Aldaher concluded that Plaintiff "was able to do work related activities such as sitting, standing, walking, lifting, carrying, and holding objects." (*Id.*).

The ALJ also considered Malone's January 2016 evaluation with Wael Hamo, M.D., where "an electromyogram and nerve conduction study revealed: (1) moderate to right severe right carpal tunnel syndrome, [and] (2) moderate left carpal tunnel syndrome." (R. 22 & 1066). Dr. Hamo suggested that Plaintiff use wrist splints on his follow-up appointment later that month despite reporting a neurological examination that "revealed [Plaintiff had a] right hand grip strength of 80–90/100 and left hand grip strength 90/100." (R. 26 & 1065–66). Dr. Hamo recommended conservative treatment.

---

[7] The ALJ gave partial weight to Dr. Aldaher's opinion. (R. 28).

That ALJ also relied on Plaintiff's own testimony in her decision. He testified that he could "lift a gallon of milk with his left arm." (R. 19 & 76). He reported that he does not "have problems lifting overhead with his right arm." (R. 19). He drives two to three times per week. (R. 18 & 69). Although he has some difficulty changing his clothes, he is still able to perform basic hygiene and self-care. (R. 17).

The ALJ relied on each of these sources of evidence in the determining Malone's RFC and limitations, and in concluding that he could perform work tasks that included frequent bilateral handling and fingering. The Court has thoroughly reviewed the Plaintiff's medical records from the Tuskegee VA Medical Clinic dating back to 2003, and found no specific mention of complaints of Malone's inability to use his hands or concomitant pain associated with carpal tunnel syndrome. While Malone complained of pain in his lower back, the Court was unable to find one complaint directly related to his hands. Dr. Hamo's diagnosis, without more, is insufficient to support a determination that Malone's carpal tunnel syndrome is so debilitating he cannot perform "fine or gross movements effectively." (R. 26). "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Manzo v. Comm'r of Soc. Sec.*, 408 F. App'x 265, 269 (11th Cir. 2011). While the record indicates that the Plaintiff has been diagnosed with carpal tunnel syndrome, the evidence in the record does not demonstrate that this impairment compromises his ability to perform sedentary work. The Court concludes that

substantial evidence supports the ALJ's residual functional determination and that the limitations recognized therein sufficiently incorporate Malone's impairments.

**B. Plaintiff's Subjective Complaints**.  Malone next argues that the ALJ did not properly consider his pain testimony prior to issuing the unfavorable decision.  (Doc. 10 at 11).  Specifically, Malone points to his "objectively determined neck impairment" and the "moderate spinal stenosis and severe eccentric bony foraminal stenoses of [his] cervical spine" as factors that could "give rise to his alleged pain." (*Id.*).  Additionally, he argues that the ALJ's statement that his testimony is "not consistent with the medical evidence" is "conclusory and does not provide substantial evidence in support of her decision." (Doc. 10 at 11).

"Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability."  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (emphasis in original).  The Eleventh Circuit has developed a three-part "pain standard" that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). That standard requires a claimant to show:

> (1)  evidence of an underlying medical condition *and either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)) (emphasis added).

In this circuit, the law is clear. The ALJ must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the ALJ fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

At the administrative hearing, Malone testified that he suffers from neck and back pain as the result of his 2015 motor vehicle accident. (R. 76). In her disability determination, the ALJ detailed the medical evidence and discussed Malone's testimony. The ALJ then concluded that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (R. 19).

The ALJ found that Malone's "medically determinable impairments could reasonably be expected to produce [pain]; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record" in this case. (R. 25). The ALJ also specifically found as follows:

> I find that the medical signs and laboratory findings do not establish a medically determinable impairment present that would give rise to pain at such an intensity and persistence consistent with the claimant's testimony. The claimant has no

13

neurological deficits, muscle atrophy, nor significant weight loss, generally associated with protracted prolonged pain, at a severe level. Considering the factors enumerated in 20 CFR 404.1529, I find that the claimant's testimony concerning the intensity, persistence, and functionally limiting effects of his pain is not supported by substantial objective medical evidence, including medical signs and laboratory findings, nor that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain, and that the claimant's testimony is an exaggeration and not consistent with the medical evidence of record. I further find that the intensity, persistence, and functionally limiting effects of the claimant's pain do not preclude the performance of work activity.

(R. 26).

A review of the ALJ's analysis demonstrates that the ALJ properly considered and discredited Malone's testimony regarding his pain. Malone primarily complains of neck and lower back pain. However, the ALJ found that his complaints did not match the objective medical evidence. For instance, the ALJ noted that the Plaintiff "underwent surgery for a torn rotator cuff and was returned to work at full duty." (R. 25). Also, an evaluation following Plaintiff's motor vehicle accident revealed no severe injuries to his lower back or left shoulder. (R. 20 & 285). The ALJ noted Dr. Aldaher's October 2015 examination in which Dr. Aldaher concluded that Malone's range of motion in his neck "revealed no abnormality in the cervical area" (R. 21 & 1058), and that his back had "no spasm" or "abnormality of range of motion in the lumbosacral area." (R. 25 & 1058-59). In addition, an imaging of Malone's left shoulder and spine were "fairly benign" during a consultation with the Tuskegee VA on December 14, 2015. (R. 22 & 1097-98).

The ALJ also relied on medical evidence that showed no signs of prolonged pain. The ALJ noted that Malone, "has no neurological deficits, muscle atrophy, nor significant weight loss, generally associated with protracted prolonged pain, at a severe level." (R. 25. Relying on statements made during a pain management consultation, Malone argues that his medical records support his complaints of pain. His reliance is misplaced. The medical notes merely repeat Malone's subjective statements to medical personnel, and are not reflective of the medical personnel's assessments. (Doc. 10 at 9 & R. 1200).

The ALJ also specifically considered Dr. Hamo's January 28, 2016 examination revealing, in the ALJ's characterization, "tenderness of the cervical and lumbar spine and that claimant had a normal gait." (R. 29 & 1061). Finally, the ALJ noted the VA's November 28, 2016 assessment of Plaintiff's lumbar spine that "revealed right paraspinous tenderness," "normal" motor and sensory abilities, and that his "most recent imaging did not correlate with low back nerve impingement." (R. 29 & 1266).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561-62; *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562 (quoting *Tieniber*, 720 F.2d at 1255) (although

no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit a plaintiff's subjective complaints as long as she provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. Relying on the treatment records, objective evidence, and Malone's own testimony, the ALJ concluded that his allegations regarding the extent of his pain were not credible to the extent alleged and discounted that testimony. After a careful review of the ALJ's careful, detailed and thoughtful analysis, the court concludes that the ALJ properly discounted the Plaintiff's testimony and substantial evidence supports the ALJ's credibility determination.

It is undisputed that Malone suffers from pain. However, the ALJ concluded that while Malone's underlying conditions are capable of giving rise to some pain and other limitations, his impairments are not so severe as to give rise to the disabling intractable pain he alleged.

Malone also argues that the ALJ did not evaluate the intensity and persistence of his spinal stenosis and eccentric bony stenosis symptoms. (Doc. 10 at 11). But the ALJ did consider these symptoms. For example, the ALJ noted that at a follow-up visit Malone preferred to delay injections in his cervical and lumbosacral spine. (R. 22 & 1061-62). Malone also refused a non-narcotic pain medication after his request for a narcotic-strength refill was denied because he tested positive for marijuana, and at the same appointment he refused a physical therapy consultation. (R. 21 & 1121). In August 2015, Malone left before completing the recommended physical therapy following his left shoulder surgery,

stating that he could not bear the pain. As he was leaving, however, Plaintiff remarked that "he had settled his worker's compensation claim and that he was leaving." (R. 20 & 586). There is no basis for concluding that ALJ erred in her consideration of this evidence.

To the extent that Malone is arguing that the ALJ should have accepted his testimony regarding his pain, as the Court explained, the ALJ had good cause to discount his testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). For these reasons, the Court concludes that the ALJ's reasons for discrediting Malone's testimony were both clearly articulated and supported by substantial evidence.

**C. Medical Opinions**. Finally, Malone argues that the ALJ failed to properly articulate adequate rationale for assigning partial weight to the medical opinions of Dr. Knight and nurse practitioner King. (Doc. 10 at 11-14). Indeed, it is reversible error for an ALJ to fail to articulate the weight given to a non-treating physician opinion or the grounds for discounting that opinion. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 (11th Cir. 2015). After reviewing the ALJ's decision and the record as a whole, however, the Court finds that the ALJ provided ample evidence and rationale for assigning partial weight to the medical opinions of Knight and King.

"In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported,

whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)).   More weight is given to specialists than generalists. 20 C.F.R. § 416.927(c)(5).   In any event, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).   A "treating source" must have an "ongoing treatment relationship," meaning that Malone must "see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [Malone's] medical condition(s)."   20 C.F.R. § 404.1527(a)(2). However, a medical source that has evaluated a patient "only a few times or only after long intervals (e.g., twice a year)" can be considered a treating source "if the nature and frequency of the treatment or evaluation is typical for [Malone's] condition(s)."   20 C.F.R. § 404.1527(a)(2).

On the other hand, the ALJ is not obligated to give any particular deference to medical opinions based on a one-time evaluation.  *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion."); *Eaton*, 180 F. Supp. 3d  1055-56 (holding that the ALJ's RFC assessment is not required to "be supported by the assessment of an examining or treating physician").

*1.  King's Opinion*.  Malone argues that the ALJ failed to provide an adequate justification for assigning partial weight to nurse practitioner King's opinion that Malone

had an abnormal gait because the ALJ's statement was "too conclusory." (Doc. 10 at 11-15). King conducted a Compensation and Pension examination of the Plaintiff's thoracolumbar spine on February 10, 2016. This examination was the only time King assessed Malone, and therefore, the ALJ correctly did not consider King to be a treating physician. *See McSwain*, 814 F.2d at 619. King concluded that Malone had an abnormal gait and decreased sensation, but she noted that Malone was having a flare up at the time of the examination. (R. 23, 25, 28 & 1152). Though the ALJ acknowledged that the medical evidence indicates that Malone was diagnosed with degenerative disc disease of the cervical spine and lumbar radiculopathy (R. 25), the ALJ assigned partial weight to King's opinion because the assessment was only "partially consistent" with the record as a whole. (R. 28).

The ALJ also pointed to medical opinions by other doctors who examined Malone before and after King examined him. For instance, on October 15, 2015 Dr. Aldaher concluded that Plaintiff had a normal gait, grip, and range of motion in the lumbar spine. (R. 25 & 1058). On January 28, 2016, Plaintiff was evaluated at the Hamo Neurological Clinic where, the ALJ noted, he had a normal gait along with tenderness of the cervical and lumbar spine. (R. 25 & 1060-62). And on February 12, 2016, two days after King's evaluation, Jacqueline Ross, LPN, noted that Plaintiff "ambulated with a steady gait." (R. 25, 29 & 1222).

This objective medical evidence supports the ALJ's assignment of partial weight to King's opinion because the evidence as a whole contradicted the conclusion that Plaintiff

had an abnormal gait, and the ALJ provided sufficient rationale to support her decision to assign King's opinion only partial weight.

2. ***Knight's Opinion***.  Malone also complains that the ALJ's statement regarding Dr. Knight is "too conclusory" to support assigning only partial weight to her opinion. Malone underwent a psychological evaluation with Dr. Knight on February 1, 2016.  (R. 22, 1091-95 & 1156-60).  Dr. Knight evaluated Malone on this occasion only, yet she determined that his mental state had "worsened" over the past four years. (R. 23 & 1094). *See also, McSwain*, 814 F.2d at 619 (noting that the ALJ is not obligated to accept medical opinions based on a one-time evaluation).  In concluding that Dr. Knight's assessment was "partially consistent with the record as a whole," the ALJ detailed Malone's medical records that indicated that other physicians and psychologists offered opinions that differed from Dr. Knight's psychological examination.  For example, Baowu Wang, M.D. evaluated Malone on June 1, 2015, finding that he was "alert and oriented . . . his recent and remote memory [and concentration] were intact . . . and [h]is mood was mildly sad and his affect was constricted." (R. 21 & 325-26).  Dr. Wang's assessment included, among other things, that Malone suffered from "Major Depressive Disorder, mild." (R. 21 & 325-26).  Juan Carmona, M.D., saw the Plaintiff on two separate occasions, October 2, 2015 and April 11, 2016.  He opined that Malone "was fully oriented. His mood and affect were normal. His cognitive functions, memory, and concentration are good. His insight and judgment were good."  His assessment was "mild traumatic brain injury and depression."  (R. 21, 24, 29

& 1202-06).  Dr. Pamela Griffiths evaluated Malone on November 30, 2015.  (R. 1105).

Dr. Griffiths determined that Plaintiff was "mildly dysthymic," but noted that he was non-

compliance with his medication.  (R. 1105 & 1107).  Dr. Griffiths assessed Malone with:

"depression . . . r/o [rule out] secondary gain as primary [and] compliance issues." (R.

1108).

The ALJ also noted the January 24, 2017 mental status evaluation, conducted by the

Tuskegee VA Medical Clinic, revealed that Malone "was fully oriented. His mood and

affect were normal. He denied suicidal ideations . . .. His cognitive functions, memory and

concentration were good. His insight and judgment were good. The assessment was mild

traumatic brain injury and depression, responding fair to current medication and in need of

medication adjustment and refills." (R. 29).   The ALJ examined and evaluated all of

Malone's medical records, and she considered Malone's own testimony.  Only then did the

ALJ assign only partial weight to Dr. Knight's opinion regarding Malone's reliability,

productivity, and ability to maintain effective work and social relationships.  Based on its

review of the ALJ's decision and the objective medical evidence of record, the Court

concludes that the ALJ provided sufficient rationale for assigning partial weight to Dr.

Knight's opinion.

"Even though Social Security courts are inquisitorial, not adversarial, in nature,

claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec.,*

496 F.3d 1253, 1269 (11th Cir. 2007).  This the Plaintiff has failed to do.  Pursuant to the

substantial evidence standard, this Court's review is a limited one; "the entire record must

be scrutinized to determine the reasonableness of the ALJ's factual findings." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). It is not the province of this Court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead the Court reviews the record to determine if the decision reached is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V. CONCLUSION

The Court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that the Plaintiff is not disabled, and the decision of the Commissioner is due to be affirmed.

A separate order will be entered.

DONE this 22nd day November, 2019.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE